UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C-11-1400 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| APPROXIMATELY $194,752 IN UNITED STATES CURRENCY, | (**Docket No. 12**) |
| Defendant. | |
| _____/ | |

Plaintiff the United States of America initiated this civil forfeiture action against the $194,752 as a drug-related seizure under 21 U.S.C. § 881(a)(6). After no response to the complaint was received, the Clerk of the Court entered default. Currently pending before the Court is the United States's motion for default judgment. Having considered the papers filed by the United States, the Court hereby **GRANTS** the motion for default judgment.

## I.  FACTUAL & PROCEDURAL BACKGROUND

As alleged in the complaint, the $194,752 was seized following a traffic stop and the subsequent execution of a search warrant at the residence of the vehicle driver. More specifically, on September 14, 2010, Officer Patrick Gillette of the Santa Rosa Police Department conducted a traffic stop of a car driven by Kevin James Sparks. *See* Compl. ¶ 8. When the officer asked if Mr. Sparks had any marijuana in the car, Mr. Sparks replied, "Yeah, I have some in my backpack." Compl. ¶ 9. Officer Gillette then conducted a search of the car (with his trained and certified narcotics canine) and recovered six cell phones and a backpack containing $4,425, a can of mace, 3

large plastic bags, and 22 silver foil bags. *See* Compl. ¶ 11. Officer Sparks further recovered, from the back seat of the car, a large plastic bag containing 143 rooted marijuana plants. *See* Compl.¶ 11. A search of the trunk revealed additional evidence, more specifically 11 bags, each containing 1 pound of marijuana; 3 boxes of sealed ziploc bags; and 20 separate bundles of United States currency amounting to $99,880. *See* Compl. ¶ 12. Mr. Sparks claimed he was transporting the marijuana for an acquaintance and the marijuana in the backpack was payment for delivering the marijuana. *See* Compl. ¶ 13. He also claimed the money was for playing cards in Las Vegas. *See* Compl. ¶ 13.

Mr. Sparks was arrested for violations of various provisions of the California Health and Safety Code. *See* Cal. Health & Safety Code §§ 11358 (plant/cultivate marijuana), 11359 (possess marijuana for sale), and 11370.6(a) (possess money, etc. from sale of a controlled substance). *See* Compl. ¶ 15. Based on a subsequent surveillance investigation, a search warrant was executed for the premises of 8220 Brand Lane, Penngrove, California, where Mr. Sparks and his girlfriend were renting a home. *See* Compl. ¶ 17. In the master bedroom, officers found two pounds of processed marijuana buds in mason jars, high capacity rifle magazines, ammunition, and body armor. *See* Compl.¶ 18. In the living room, officers located 6 bags, each containing 1 pound of processed marijuana buds, as well as indicia of marijuana processing and distribution, including a number of cell phones and packaging materials. *See* Compl. ¶ 18. Officers also found a small room converted into a marijuana cultivation operation with a tray containing 67 marijuana clones beneath lights. *See* Compl. ¶ 18. In a back shed, officers located two electronic currency counters. *See* Compl. ¶ 18. The search of the residence yielded a total of $90,457, found in the master bedroom and in a safe located in the loft ($960 of which was later determined to be counterfeit). *See* Compl. ¶¶ 18, 20.

Through this action, the government is now seeking forfeiture of the currency recovered from the vehicle and the search of the residence on the basis that the currency is connected to drug trafficking. Title 21 U.S.C. § 881(a)(6) provides that property subject to forfeiture includes "[a]ll moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this title."

2

1  The money at issue totals approximately $194,752. *See* Compl. ¶ 20. No claim or answer to the
2  complaint has been filed. *See* Docket No. 10. Upon the request of the government, the Clerk
3  entered a default on June 10, 2011. *See* Docket No. 11. The United States then filed the pending
4  motion for default judgment.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 55(b)(2), a district court may grant a default judgment against a defendant after an entry of default. *See* Fed. R. Civ. P. 55(b)(2). Whether to grant a default judgment is a matter within the discretion of the court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986). The following factors are typically considered:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Make sure the United States followed the procedure for forfeiture, describe how no claimant has come forward claiming any interest.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In evaluating a motion for default judgment, a court accepts as true all well-pled factual allegations in the complaint, except those that pertain to damages. *See DirecTV, Inc. v. Hoa Huynh,* 503 F.3d 847 (9th Cir. 2007); *see also TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th. Cir. 1986) (finding that "[t]he general rule of law is that, upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

### B. Notice

Before examining the above factors, however, the Court must first consider whether the proper procedural requirements, specifically those regarding notice, were followed. Actions for forfeiture are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") and Maritime Local Rules ("Local Rules"). The Supplemental rules require, *inter alia*, that the government provide general notice of the action, as well as direct notice

to any potential claimant. *See* Supp. R. G(4)(b)(ii)(C); Supp. R. G(4)(b)(i). Those receiving notice are given a certain time period in which they can file a claim. *See* Supp. R. G(5)(a)(ii)(B); Supp. R. G(4)(b)(ii)(B). The Local Rules require that a party seeking default judgment show that due notice was given in accordance with the Supplemental Rules. *See* Admir. L. R. 6(1)(a).

In the instant case, the government has provided evidence establishing that general notice was provided via publication on an official government forfeiture website for thirty consecutive days (from March 25, 2011 to April 23, 2011). *See* Docket No. 8; Supp. R. G(4)(b)(ii)(C). The government has also provided evidence demonstrating that direct notice was provided to Mr. Sparks by serving his attorney William Panzer. *See* Docket No. 5. Moreover, the government served Mr. Sparks directly, Mr. Panzer, and Stephanie Hughes (Mr. Spark's girlfriend who shared a residence with him at the time of the search) with a copy of the request for entry of default, the Clerk's notice of default, and the motion for default judgment. At the hearing, the government indicated they had received no response from Mr. Panzer, and the only response from Ms. Hughes was a request for the United States to stop serving her with papers. In spite of all of these notices, no one has filed a claim or otherwise responded to the complaint.

Taking into account the above, the Court concludes that the United States has satisfied the procedural requirements for the forfeiture action and adequate notice of the action has been given.

C.  *Eitel* Factors

Turning to the merits of the motion for default judgment, the Court looks, as discussed above, to the *Eitel* factors. *See Eitel*, 782 F.2d at 1471-72. These factors largely weigh in favor of a default judgment. For example, the United States would be prejudiced if default judgment were not entered because it would be forced to continue the litigation even though no party has filed an answer or a claim. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent some resolution, the United States would be without a remedy. Also, a dispute concerning material facts is unlikely to arise because, now that default has been entered, all well-pled allegations in the complaint must be taken true. *See Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (finding that "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default, there is no likelihood that any genuine

4

issue of material fact exists"). Nothing suggests the material facts are in dispute. Although policy considerations favor a decision on the merits, where, as here, no party appears to oppose the action, there is likely no dispute on the merits, and thus default judgment is appropriate. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

The only *Eitel* factors that are deserving of further analysis are the second and third factors, which concern the merits of the plaintiff's case and the sufficiency of the complaint. Courts often analyze these two factors together. *PepsiCo*, 238 F. Supp. 2d at 1175). Essentially, these factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, 1996 LEXIS 1786, at *5 (N.D. Cal. Feb. 13, 1996) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Here, the United States seeks forfeiture under 28 U.S.C. § 881(a)(6). This statute provides for forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

28 U.S.C. § 881(a)(6). For a forfeiture action, the government must show probable cause connecting the seizure of property with illegal drug transactions. *See* 19 U.S.C. § 1615 (2001); *see also United States v. 493,850.00 in United States Currency*, 518 F.3d 1159 (9th Cir. 2008) (holding that the probable cause standard for instituting a civil forfeiture action survives the requirements of the Civil Asset Forfeiture Reform Act of 2000). The determination of probable cause is based on the aggregate of facts and may be established by circumstantial evidence. *See United States v. United States Currency, $30,060.00*, 39 F.3d 1039, 1041 (9th Cir. 1994).

As the Court takes the factual allegations pled in the complaint to be true (except as to damages), it is satisfied that the government has established probable cause connecting the currency with drug trafficking. The totality of the circumstances indicate that the currency is connected to drug trafficking. For example, Mr. Sparks claimed that he was transporting marijuana for an acquaintance and that some of the marijuana was payment for that transfer. From not only the

vehicle but also the residence, officers recovered marijuana packaged in 1 pound bags as well as packaging and distribution materials including multiple cell phones and ziploc bags. At the residence, officers also recovered money counters, body armor, and ammunition. *See United States v. 3,063.00 in United States Currency*, 2011 U.S. Dist. LEXIS 58746 (S.D. Cal. June 2, 2011) (finding probable cause establishing a nexus between currency and drug trafficking where drugs were found in close proximity to currency in the car and the driver of the car possessed multiple cell phones as well as packaging materials). Because the government has established probable cause linking the currency to drug trafficking, the forfeiture claim has substantive merit and the complaint is sufficient under 28 U.S.C. § 881(a)(6). In sum, the *Eitel* factors weigh in favor of default judgment.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the United States's motion for default judgment.

This order disposes of Docket No. 12.

IT IS SO ORDERED.

Dated: August 19, 2011

_____
EDWARD M. CHEN
United States District Judge